***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms the Opinion and Award of the Deputy Commissioner with some modifications.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following which were entered into as:
 STIPULATIONS
1. That the parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. That an employer/employee relationship existed at the time of the alleged incident.
3. That all parties are properly before the North Carolina Industrial Commission and the North Carolina Industrial Commission has jurisdiction over the parties and subject matter of this claim.
4. That a properly executed Form 22 was submitted to the North Carolina Industrial Commission.
5. That Defendants properly denied this claim via the filing of a Form 61.
6. That the Plaintiff is alleging a low back injury on March 21, 2001.
7. That the following documents were stipulated into evidence prior to the beginning of the hearing:
a. Pre-Trial Agreement;
b. Plaintiff's medical records;
 c. The Industrial Commission forms filed on this claim;
 d. Defendants' responses to discovery, which include a copy of the Plaintiff's Recorded Statement, the Plaintiff's personnel file, and hours worked post accident by Plaintiff.
 ***********
Based upon all of the evidence presented at the hearing, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff's date of birth is April 6, 1946. Plaintiff is approximately four feet, eleven inches tall and weighs approximately 155 pounds. She attended school into the ninth grade and does not have a GED. Plaintiff has worked as a Certified Nursing Assistant (CNA) since 1971. Plaintiff began working as a CNA for Defendant Employer, White Oak Manor, in September 2000. She had also worked there on a previous occasion.
2. On March 21, 2001, Plaintiff was attempting to lift and turn a patient, who grabbed the bed rail, resisting her. Plaintiff felt immediate pain in her lower back and hip. Plaintiff's injury arose out of and in the course of her employment and was the direct result of a specific traumatic incident of the work assigned and therefore constituted an injury by accident. Plaintiff immediately reported the injury to her supervisor, Barbara Norton, and submitted an Incident Report. Plaintiff did not, however, seek medical treatment until 5 — 6 days later. Defendant-employer did not turn in this Incident Report to the insurance carrier at that time, nor require Plaintiff to be examined by a physician of their own choosing.
3. Plaintiff first sought medical treatment with her family physician, Dr. Todd Walters, on March 30, 2001. She complained of pain in the neck, shoulder, back and occasional hip discomfort. Plaintiff indicated to Dr. Walters' nurse that she pulls on patients a lot. Dr. Walters prescribed Celebrex, to which Plaintiff suffered an allergic reaction. Dr. Walters then switched Plaintiff to Vioxx which also caused an allergic reaction. Plaintiff kept working at full duty, but with continuing pain. Plaintiff took Advil for the pain.
4. Plaintiff took a two-week leave of absence from August 2, 2001 through August 17, 2001 to take care of her husband who was recovering from prostate surgery. Plaintiff returned to work on August 18, 2001.
5. Plaintiff stopped taking Vioxx due to concerns about possible association with heart attacks, and her back pain increased. Plaintiff sought treatment from Dr. Walters on August 27, 2001 for complaints of radicular symptoms. Dr. Walters restarted her on Vioxx. Plaintiff was then sent for x-rays which revealed degenerative disk changes at L5-S1. Dr. Walters referred Plaintiff to Dr. Hobart Rogers, an orthopedic surgeon, for further evaluation.
6. Plaintiff began treatment with Dr. Rogers on September 18, 2001. She gave a history of having low back pain for several years, but that for the past two to three months she had been having pain that goes down her leg to her ankle. Dr. Rogers placed Plaintiff in physical therapy at St. Luke's Hospital and switched her medication from Vioxx to Voltaren. He diagnosed her with degenerative arthritis of the lumber spine with right sciatica. Dr. Rogers also ordered an MRI, which was performed on October 6, 2001. According to the notes of Dr. Rogers the MRI was incomplete and was not available, but the report indicated there were some degenerative changes in the facet joints with possible nerve root irritation and compression.
7. Dr. Rogers referred Plaintiff to Dr. Mark Moody, an orthopedic surgeon with a subspecialty in spine surgery, who first saw her on October 22, 2001. Plaintiff complained of right hip and leg pain which was slightly greater than her low back pain. Plaintiff reported that she had intermittent low back pain for several years, but it had never been severe enough to require medical treatment and that in June 2001 she began to have pain radiating down her right leg. Dr. Moody diagnosed right L-5 radiculopathy due to narrowing at the L4-5 level, placing pressure on the nerve roots at L4-5. Dr. Moody started Plaintiff on a series of three epidural steroid injections, beginning on October 22, 2001. On October 23, 2001, Dr. Moody placed Plaintiff on work restrictions that included no repetitive bending, twisting or lifting over 20 pounds.
8. Plaintiff returned to Dr. Moody on November 13, 2001 for her second epidural steroid injection. She was taken out of work for two weeks at that time.
9. On November 20, 2001, Plaintiff returned to Dr. Moody for her third and final epidural steroid injection. She was returned to work with restrictions of no lifting over 20 pounds on or about November 24, 2001.
10. Plaintiff saw Dr. Moody on December 17, 2001. She informed him that she had some initial improvement of her leg pain after the epidural injections, but her severe pain had returned and she was having difficulty working.
11. At her February 4, 2002 visit to Dr. Moody, Plaintiff elected to proceed with fusion surgery at L4-5, due to severe low back pain radiating into the left buttock and lateral thigh down to the level of the knee. This pain was significantly compromising her activities of daily living even though plaintiff continued to work on light duty. Due to Plaintiff's pain, Defendant-employer assigned her to a light duty housekeeping position which included washing wheelchairs and filling ice buckets. Plaintiff did this job for few days; but on February 13, 2002, Dr. Moody took her out of work due to back and leg pain until further notice while she awaited approval for surgery.
12. Plaintiff underwent decompressive laminectomy and instrumented L4-5 fusion on April 15, 2002. Plaintiff was started on Oxycodone and Hydrocodone, but could tolerate neither. She was switched to Mepergan Fortis and given Ambien to help her sleep. On May 20, 2002, Plaintiff was given Zoloft samples due to crying spells. She continued on Ambien and Lortabs. She was kept out of work due to her surgery for an initial period of 12 weeks. At her July 15, 2002 visit, plaintiff was written out of work for an additional two months. An MRI was ordered on September 16, 2002 and Plaintiff was referred back to Dr. Rogers for evaluation of shoulder pain. In December, 2002, Plaintiff was placed in physical therapy.
13. On March 17, 2003, Dr. Moody opined that it was unlikely Plaintiff would be able to return to her position as a CNA. She continued to have soreness in her back, but no leg pain. Her fusion appeared solid.
14. In August of 2003, Dr. Moody assigned a 30% permanent partial impairment rating to Plaintiff's back. On September 14, 2003, Dr. Moody released Plaintiff from his care. At that time Plaintiff had decreased range of motion of the lumbar spine, normal gait and normal strength sensation. She reported increased pain with prolonged sitting, standing, lying down and bending. She had completed 6 months of post operative physical therapy without any improvement in symptoms. She was taking hydrocodone twice a day. Dr. Moody recommended that plaintiff consult Vocational Rehabilitation Services to see if assistance could be provided in helping her find another job.
15. Dr. Moody opined and the Full Commission so finds that Plaintiff had a history of some intermittent back pain, but following her work injury she developed severe back pain which by June of 2001 had also begun radiating into her right leg and based on this history, Plaintiff's specific injury could have aggravated a pre-existing degenerated disc and caused her symptoms. The Full Commission finds that the history Plaintiff provided to Dr. Moody is credible.
16. Dr. Moody further opined and the Full Commission so finds that that Plaintiff's March 21, 2001 specific traumatic incident significantly contributed to her injury and symptoms and led to the need for surgery.
17. Based on medical literature, Dr. Moody further opined that the activities associated with the position of a CNA "certainly could" be the type of activities that are generally thought to contribute to the development of degenerative disc disease if performed over decades and that he believed Plaintiff employment duties as a CNA since the early seventies contributed to her development of degenerative disc disease. Although, Dr. Moody testified that he was familiar with the job duties of a CNA, the evidence does not establish what those duties are that Dr. Moody considered in rendering this opinion.
18. Defendant denied plaintiff's claim on a Form 61 on February 27, 2002 and again on July 7, 2003.
19. Plaintiff's testimony is found to be credible.
20. Plaintiff had an average weekly wage of $289.52 which yields a compensation rate of $193.02.
 ***********
Based upon the foregoing Stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury to her back arising out of and in the course of her employment as a direct result of a specific traumatic incident of the work assigned by defendant-employer on March 21, 2001. N.C. Gen. Stat. § 97-2(6). The injury to Plaintiff's back aggravated her pre-existing, non-disabling degenerative disc condition to such an extent that she required fusion surgery at the L4-5 disc level and suffered disablement. N.C. Gen. Stat. §§ 97-29; 97-2(9).
2. Plaintiff's average weekly wage of $289.52, yields a compensation rate of $193.02. N.C. Gen. Stat. §§ 97-2(5).
3. As a result of her compensable injury of March 21, 2001, Plaintiff was totally disabled from work from February 13, 2002, to the present and continuing. N.C. Gen. Stat. § 97-29. Thus, Plaintiff is entitled to receive temporary total disability benefits in the amount of $193.02 per week from February 13, 2002, to the present and continuing until further order of the Commission.
4. Degenerative disc disease is not a listed occupational disease under Section 97-53 of the Act. Plaintiff's claim for compensation for an occupational disease is therefore governed by Section 97-53(13). A Plaintiff seeking compensation for an occupational disease pursuant to Section 97-53 (13) must establish that the disease or condition meets the following three criteria: (1) the condition is characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) the condition is not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there is a causal connection between the disease and the employment. Dr. Moody gave the opinion that Plaintiff's employment as a CNA over a long period of time could have contributed to the development of her degenerative disc disease; that he is familiar with the job duties of a CNA and that the job duties of a CNA are generally thought to contribute to the development of degenerative disc disease if performed over long periods of time. There is insufficient evidence from which to find what job duties performed by Plaintiff Dr. Moody considered in rendering his opinion. In order to establish a claim that her degenerative disc disease is an occupational disease, Plaintiff must establish that she contracted the occupational disease as a result of her job duties. Plaintiff has not met her burden of proof on this issue. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981).
5. Plaintiff is entitled to the payment of medical expenses incurred or to be incurred as a result of her compensable injury which are reasonably required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. § 97-2(19): N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, Plaintiff is entitled to temporary total disability compensation in the amount of $193.02 per week from February 13, 2003 and continuing until further Order of this Commission.
2. Defendants shall pay for medical expenses incurred, or to be incurred by Plaintiff as a result of her compensable injury for so long as such treatment may reasonably be required to effect a cure, provide relief, or lessen the period of disability when such bills are approved according to procedures adopted by the Commission.
3. Defendants shall reimburse Plaintiff for proper out of pocket expenses pertaining to mileage and medical treatment arising out of this claim.
4. A reasonable attorney fee is approved for Plaintiff's counsel in the amount of twenty-five percent (25%) of accrued disability compensation benefits currently due Plaintiff and every fourth check of future disability compensation to be paid to Plaintiff.
5. Defendants shall pay the costs of this action.
 ORDER
Plaintiff's claim for compensation due to an occupational disease is denied. Defendant's Motion to Strike dated February 10, 2005 is granted.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/__________ THOMAS BOLCH COMMISSIONER